JUDGE PETERS
delivered the opinion oe the court.
The General Council of the city of Louisville ordained that a well should be dug and walled on High Street at or *227 near where Twentieth Street would, if extended, intersect the same; said work to be executed under the supervision of the city engineer, and in accordance with specifications to be furnished by him and with an ordinance approved July 1, 1868, entitled, “General ordinance prescribing the mode of executing contracts for digging and walling wells in the city of Louisville,” and at the exclusive cost of owners of property, as provided for in an ordinance approved July 14, 1870, entitled, “General ordinance concerning the cost of making wells.”
The contract for the digging and walling the well at the place and in the manner prescribed in the ordinance was let to Daniel Sevinan, who executed a covenant, with approved surety, for the performance of the work for the stipulated price.
Subsequently the city engineer reported to the General Council that the work was completed according to contract at the cost of two hundred and ten dollars, of which sum he reported that appellee, Bland Ballard, as owner of property adjacent to said improvement, should pay one hundred and five dollars.
An apportionment warrant was thereupon issued in favor of the contractor against the property of appellee Ballard for the last-named sum, which the said Sevinan assigned to appellee Osborne; and Ballard having failed to dischai’ge said claim, this suit was brought to subject his property adjacent to said improvement to satisfy the same; and the city of Louisville was made a defendant by an amended petition, in which it was sought to make it liable in the event that Ballard’s property was not.
The court below rendered judgment against the city for the amount of the claim and dismissed the petition as to Ballard, and the city has appealed to this court.
After a general traverse of the liability of himself or *228 property to the contractor or his assignee for any part of the improvement set forth Ballard admits, in a separate paragraph in his answer, that he is the owner of two hundred and ten feet of land on the north side of High Street in said city by five hundred and nineteen and three quarter feet deep, to the Louisville and Portland Canal, part of a larger tract owned by him, the boundary of which he sets out, and states that said land lies between Bridge Street on the east, Lock Street on the west, High Street on the south, and the Louisville and Portland Canal on the north; that in the vicinity of said work north of High Street there is no street perpendicular to or parallel with said street, or any street or streets at all; that there are no squares therein; that all the streets, alleys, and squares in said district were abolished by a decree in the case of J. R. Buchanan against J. W. Knight & Co., No. 14,786, rendered by the Louisville Chancery Court on the 20th of May, 1859; that said well was not made at or near an intersection of streets or public ways; that Twentieth Street does not cross or intersect 'High Street, or abut or touch on either side thereof, nor is there in any part of said district or in the vicinity of said well any squares on which the cost of said work may be apportioned or assessed, nor any mode prescribed by law or ordinance by which the same can be apportioned or assessed against said property or the owner thereof.
The 14th section of the charter of the city of Louisville reads thus: “The General Council shall have power to cause the digging and walling of public wells and cisterns and placing fire-plugs and attachments to the street water-pipes, on the public ways within the city, and to apportion the cost thereof against the owners of lots fronting the public ways to the middle of each square from' the intersection at or' near which the work shall be located, or any other equitable mode of apportionment which said council may prescribe by ordi *229 nance, and liens shall exist against such lots for the respective apportionments with like effect and like remedies as provided in section 12 of this charter for improvement of public ways.
By the authority conferred on the General Council by the section of the charter just quoted the following general ordinance was passed by the General Council: Be it ordained, etc., that hereafter, unless otherwise specially provided in the ordinance directing the work to be done, the digging and walling of any well in any public way within the city limits, when made or placed at or near the intersection of public streets, shall be done at the cost of the owners of the lots of ground fronting said public streets to the middle of each contiguous square from the intersection at or near which the well shall be located;, and when made or placed in a public street, and not at or near an intersection,as aforesaid, shall be done at' the cost of the owners of the lots of ground fronting each side of said public way between the nearest public street crossing the same, and extending back in depth a distance equal to half way the distance from the public way in which said work is done to the nearest public street running parallel thereto; and in each case the cost thereof shall be apportioned among the owners of the lots of ground according to the number of square feet owned by them respectively within the prescribed limits, and a lien therefor shall exist on said lots of ground.”
It is to be observed that the section of the charter cited does not limit the power of the General Council of the city to cause wells to be dug at or near the intersection of streets, but they must be on public streets; and when completed, after being thus located, the cost thereof is to be apportioned against the owners of lots fronting the public ways to the middle of each square from the intersection at or near which the work shall be located. This is a mode of apportioning the cost on the owners of lots specifically provided for in the charter, and *230 applies to cases where wells are dug on public streets at or near intersections of streets; but is not the only mode, as is most manifest from the sentence which follows, in these words: “ Or any other equitable mode of apportionment which said council may prescribe.”
As therefore the section of the charter of the city authorized the General Council to cause wells to be dug in public streets where there are no intersections at the cost of lot-owners, the legislature doubtless thought it best to confer the power to prescribe the mode of apportioning the cost of such work on the General Council, and did so by the insertion of the sentence last quoted; and under the authority thus granted by the legislature and in conformity thereto the General Council passed the general ordinance herein recited; and the assessment seems to be in accordance with said ordinance.
In our opinion therefore the city should not be made responsible for the cost of the digging and walling of the well described.
Wherefore the judgment is reversed, and the cause is remanded for further proceedings consistent herewith.
No other question is before the court on this appeal.